**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William D. METT;  Marvin L. Wiseman;**
**Center Art Galleries—Hawaii, Ltd.,**
**Defendants–Appellants.**

No. 94–10503.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1995.

Decided Sept. 19, 1995.

David A. Katz, Katz & Associates, Los Angeles, CA, for defendant-appellant William D. Mett.

Dennis P. Riordan, Riordan & Rosenthal, San Francisco, CA, for defendant-appellant Marvin L. Wiseman.

Marc J. Zilversmit, San Francisco, CA, for defendant-appellant Marvin L. Wiseman.

Elton John Bain, Kessner, Duca, Umebayashi, Bain & Matsunaga, Honolulu, HI, for defendant-appellant Center Art Galleries.

Leslie E. Osborne, Jr., Assistant United States Attorney, Honolulu, HI, for plaintiff-appellee United States of America.

Ephraim Margolin, San Francisco, CA, for amicus curiae National Association of Criminal Defense Lawyers.

John T. Philipsborn, San Francisco, CA, for amicus curiae California Attorneys for Criminal Justice.

Before: POOLE and KLEINFELD, Circuit Judges, and GONZALEZ,* District Judge.

Opinion by Judge GONZALEZ;
Concurrence by Judge KLEINFELD.

GONZALEZ, District Judge:

On February 1, 1989, Honolulu police arrested Assistant United States Attorney Leslie E. Osborne Jr. for drunk driving. Two days later, he hired solo practitioner Benjamin B. Cassiday III to represent him in connection with that charge. Sometime later in February, petitioner Center Art Galleries—Hawaii Inc. ("Center Art"), whom Osborne was prosecuting, asked Cassiday to represent it as local counsel. All parties appear to have waived any possible conflict orally, and Cassiday assumed the representation. Nothing was put in writing, and the district court was not informed.

In March 1989, the United States Attorney for Hawaii, Daniel Bent, learned of the conflict and telephoned Cassiday, urging him to withdraw from representing Osborne. Cassiday agreed to do so, but did not actually withdraw as counsel of record until just before Osborne pleaded guilty on April 27.

On May 4, 1990, following a five-month trial before Judge Harold M. Fong, a jury convicted petitioners Center Art, Mett, and Wiseman of numerous counts of mail and wire fraud in connection with the sale of art works. Petitioners' primary counsel in that trial were Honolulu lawyer Brook Hart and three New York lawyers. Cassiday acted as local counsel and helped with jury selection. Petitioner Mett has declared that the defense attorneys' fees for the trial exceeded $5 million, of which Cassiday billed about $5,200.

On April 15, 1993, we affirmed petitioners' sentences on direct appeal. *United States v. Wiseman,* 991 F.2d 804, 1993 WL 118176 (9th Cir.1993) (table), *cert. denied,* — U.S. ——, 114 S.Ct. 1542, 128 L.Ed.2d 194 (1994). They subsequently filed a motion for a new trial under Fed.R.Crim.P. 33 and a § 2255 petition, which the district court denied on October 14, 1994, after holding an evidentiary hearing. Petitioners appealed. We have jurisdiction under 28 U.S.C. §§ 1291 and 2255, and we affirm.

### *ANALYSIS*

**1.** ***Petitioner Center Art's Standing.***

■ The United States contends that petitioner Center Art lacked standing to bring its ineffective assistance claim. Defendants sentenced only to pay a fine cannot attack sentences by means of the state habeas statute, 28 U.S.C. § 2254. *Edmunds v. Won Bae Chang,* 509 F.2d 39, 40 (9th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). The reasoning of *Edmunds,* based primarily on the phrase "in custody" in the statute, applies also to § 2255. Petitioner Center Art was sentenced only to a fine. Consequently, Center Art had no standing to join in Mett and Wiseman's § 2255 petition.

■ Petitioners' motion in the district court was based on Fed.R.Crim.P. as well as on § 2255. A Rule 33 motion brought more than seven days after the verdict or finding of guilty must be based on newly discovered evidence. "[A] Rule 33 motion based upon 'newly discovered evidence' is limited to where the newly discovered evidence relates to the elements of the crime charged." *United States v. Hanoum,* 33 F.3d 1128, 1130 (9th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1702, 131 L.Ed.2d 564 (1995). Because Center Art proffered no evidence relating to the elements of the crime charged,

---

* Honorable Irma E. Gonzalez, United States District Judge for the Southern District of California, sitting by designation.

**1534**

Center Art could not raise its Sixth Amendment claim through a Rule 33 motion.

■ Center Art contends, however, that the district court could have reached the merits of its Sixth Amendment claim by construing its petition as seeking a writ of coram nobis, and that it actually put this theory to the district court in one of its papers. An individual no longer in custody may employ the rarely-used writ of coram nobis to make a Sixth Amendment assistance of counsel attack on his conviction. *United States v. Morgan,* 346 U.S. 502, 511–13, 74 S.Ct. 247, 252–54, 98 L.Ed. 248 (1954). There is no reason why a corporation, also not in custody and thus lacking access to § 2255 relief, should not be able to use the writ to seek redress for a constitutional error of that magnitude.[1] For this reason, we hold that petitioner Center Art had standing to raise its Sixth Amendment claim, construing its petition in the district court as one for a writ of coram nobis.

### 2. *Violation of the Right to Conflict–Free Counsel.*

#### a. The *Cuyler* Standard

■ "We review de novo both the denial of a § 2255 motion and a determination that the prisoner was not denied his Sixth Amendment right to counsel." *Frazer v. United States,* 18 F.3d 778, 781 (9th Cir. 1994). "We review for clear error any factual findings the district court made in deciding [a § 2255] motion." *Doganiere v. United States,* 914 F.2d 165, 167 (9th Cir.1990), *cert. denied,* 499 U.S. 940, 111 S.Ct. 1398, 113 L.Ed.2d 454 (1991).

1. *See United States v. Rad–O–Lite of Philadelphia Inc.,* 612 F.2d 740, 744 (3d Cir.1979) ("Courts regularly have allowed corporations to petition for coram nobis.").

2. Petitioner Wiseman contends that he expressed his unhappiness with the conflict of interest at trial. The alleged expression of unhappiness occurred during jury selection: Wiseman asked Cassiday if he could get the prosecutor to "lighten up" because of the prior representation, and Cassiday responded that his representation of Osborne could not be used as a lever against him.

■ The Sixth Amendment entitles criminal defendants to the effective assistance of counsel, which includes a right to conflict-free counsel. *See, e.g., Garcia v. Bunnell,* 33 F.3d 1193, 1198 & n. 4 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1374, 131 L.Ed.2d 229 (1995); *United States v. Baker,* 10 F.3d 1374, 1399 (9th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994); *United States v. Allen,* 831 F.2d 1487, 1494 (9th Cir.1987), *cert. denied,* 487 U.S. 1237, 108 S.Ct. 2907, 101 L.Ed.2d 939 (1988).

■ In order to prove a violation of his Sixth Amendment right to conflict-free counsel, "a defendant who raised no objection [to the conflict] at trial must demonstrate that an actual conflict adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). However, no prejudice need be shown. *Id.* at 349–50, 100 S.Ct. at 1718–19. In this case, it is undisputed that petitioners did not object to the conflict at trial, so the *Cuyler* standard applies.[2]

#### b. Actual Conflict of Interest

The district court found that "petitioners' claim of an actual conflict is not completely meritless," but does not seem to have found squarely that there was an actual conflict. We assume without deciding that there existed an actual conflict of interest affecting not only Cassiday's client, Center Art, but also Mett and Wiseman.

#### c. Adverse Effect on Counsel's Performance

Even though *Cuyler's* adverse effect prong does not require actual prejudice, "it remains

The *Cuyler* standard serves to distinguish this case from the pre-*Cuyler* case principally relied on by petitioners, *Zuck v. Alabama,* 588 F.2d 436 (5th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979). There, the defendants' law firm also represented the prosecutor in a civil matter. The Fifth Circuit in *Zuck* found that *any* "actual" conflict—and thus the conflict at issue in that case—renders a trial "fundamentally unfair" and is a per se due process violation. *Id.* at 438–39. This holding is, of course, contrary to *Cuyler's* requirement that the defendant show that the conflict had an adverse effect on the lawyer's performance.

a substantial hurdle." *Maiden v. Bunnell,* 35 F.3d 477, 481 (9th Cir.1994). Our cases have not set up any formal test for determining whether counsel's performance was adversely affected. However, in *United States v. Miskinis,* 966 F.2d 1263, 1268 (9th Cir. 1992), we stated that "[t]o establish that a conflict of interest adversely affected counsel's performance, the defendant need only show that some effect on counsel's handling of particular aspects of the trial was 'likely.' " In *Miskinis,* for example, we listed as possible adverse effects the failure to put on certain defenses and witnesses. In *Allen,* one adverse effect was that counsel representing two defendants failed to argue that one of them had a more subordinate role in the criminal organization than the other. *See Allen,* 831 F.2d at 1497. The strength of the prosecution's case is not relevant to whether counsel's performance was adversely affected. *United States v. Hearst,* 638 F.2d 1190, 1194 (9th Cir.1980), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981). This is in accord with the rule that no showing of prejudice is required.

Petitioners contend that the conflict adversely affected Cassiday's performance in three ways: (1) other attorneys deferred to him in jury selection; (2) he failed to move for the prosecutor's disqualification on the basis of the conflict of interest; (3) he allowed Hart to make an inadequate disclosure of the conflict to Mett and Wiseman.

■ The first alleged inadequacy in counsel's performance, taking a lead role in jury selection, is not supported by any evidence whatsoever indicating that Cassiday did anything wrong in selecting the jury. A court cannot infer from this absence of evidence that it is likely that Cassiday's performance in jury selection was adversely affected by the alleged conflict of interest.

■ The second of these alleged adverse effects has a certain superficial plausibility. After all, Cassiday's loyalty towards Osborne

arguably kept him from doing something— moving for Osborne's disqualification—which could perhaps have helped his client. However, the purpose of the Sixth Amendment right to conflict-free counsel is to ensure that defendants are not harmed by their counsel's conflicts of interest. Its purpose is not to ensure that defendants benefit from those conflicts of interest. By complaining that Cassiday failed to move to recuse Osborne, petitioners are saying that they were deprived of a benefit that they might have expected to get from his conflict, and that this entitles them to a new trial. We do not believe that being deprived of a potential benefit from an attorney conflict of interest should be counted as an adverse effect in the *Cuyler* test. For this reason, we reject petitioner's contention that failing to move for Osborne's disqualification was an adverse effect.[3]

■ The third alleged adverse effect, Cassiday's failure to disclose the conflict adequately, is the most troubling. The *Cuyler* test speaks of an adverse effect on counsel's performance. The term "performance" might be read expansively to encompass all of the things lawyers do for their clients, from drafting motion papers to providing moral support. *Miskinis* spoke of "counsel's handling of particular aspects of the trial." 966 F.2d at 1268. The reference to "trial" should obviously not be taken literally; pretrial activities such as plea bargaining are also part of counsel's performance for *Cuyler* purposes, as *Allen* illustrates.

■ However, we believe that an adverse effect in the *Cuyler* sense must be one that significantly worsens counsel's representation of the client before the court or in negotiations with the government. A conflict which causes problems of some sort in some facet of the attorney-client relationship (for example, by generating transient feelings of mistrust between attorney and client), but which ultimately has no significant impact on

---

**3.** Petitioners specifically emphasize Cassiday's willingness to withdraw from representing the prosecutor when United States Attorney Bent called to ask Cassiday to withdraw. They suggest that at that point Cassiday was obligated to move to recuse the entire U.S. Attorney's office because of the conflict, and that by not doing so he somehow represented U.S. Attorney Bent's interest. Again, petitioners are saying only that they were deprived of a potential benefit they might have derived from Cassiday's conflict.

counsel's representation of the client before the court or in negotiations with the government, does not cause an adverse effect in the sense of *Cuyler*.[4] There is no evidence here that the allegedly inadequate disclosure had the necessary impact on the representation petitioners ultimately received. For this reason, the allegedly inadequate disclosure was also not an adverse effect on counsel's performance in the sense of *Cuyler*.

In sum, petitioners have not met the "adversely affected" prong of the *Cuyler* test, and the district court properly denied their § 2255 petition on that basis.

### d. The *Allen* Exception to the Adverse Effect Requirement

Petitioners cite some language from *United States v. Allen, supra,* which they argue carves out an exception to the adverse effect requirement. Allen's attorneys also represented unindicted bosses in his criminal organization. In *Allen* we stated that "[w]hen the conflicts are undisclosed, a defendant such as Allen will be unable to comply literally with the 'adversely affected' prong of *Cuyler*." 831 F.2d at 1497. We then pointed out that one of the conflicted attorneys stated that he "wouldn't exclude the possibility" that he had talked to an unindicted boss about the case, but that the contents of such conversations could not be disclosed because the unindicted bosses had refused to waive their attorney-client privilege. We noted that Allen "cannot know or prove to a reviewing court what his lawyers had learned from their other clients, or how that information caused counsel to act or refrain from acting in certain ways." *Id.* The discussion concluded with the statement that "the actual conflict in this case is too glaring, and the nondisclosure of the conflict too significant, to require any further evidence that Allen's representation was adversely affected." *Id.*

The situation here, however, is quite different from that in *Allen.* First, the conflict in *Allen* was far more glaring, involving the attorney's strong bonds of loyalty towards other persons higher up in the same criminal scheme and a clear danger that the attorney would advise the client to reject advantageous plea bargains in order to keep him from informing on the crime bosses. Here, in contrast, the drunk driving case was completely unrelated to the federal prosecution of petitioners. The conflict, if indeed one existed here, gave rise at the very most to a vague general risk that Cassiday might "go easy" on the prosecution in some way because of his feelings of loyalty to AUSA Osborne. Second, in *Allen* the possibility of discussions with the other clients regarding the case could not be excluded, whereas here there is unrebutted testimony that Cassiday and Osborne never discussed the substance of the present case. For these reasons, the *Allen* exception to the adverse effect requirement does not apply here.

### e. A Special Rule for Prosecutors?

Petitioners also contend that in the special case of simultaneous representation of a defendant and his or her prosecutor, no adverse effect should be required under *Cuyler*. They do not point out, and we cannot see, any reason for making an exception for this particular kind of conflict.

Petitioner Mett contends that we should announce here a prophylactic rule requiring reversal if a prosecutor fails to disclose a known attorney conflict of interest to the district court. It is true that such disclosure has the benefit of allowing the district court to require that the conflict be waived on the record and to exercise its discretion under *Wheat v. United States,* 486 U.S. 153, 164, 108 S.Ct. 1692, 1699–1700, 100 L.Ed.2d 140

---

**4.** In cases where we have found an adverse effect in the sense of *Cuyler*, it has been an effect on counsel's representation of the client before the court or in negotiations with the government. *See Sanders v. Ratelle,* 21 F.3d 1446, 1453–55 (1994) (failure to interview key potential witness; advising witness to invoke Fifth Amendment at client's trial); *Miskinis,* 966 F.2d at 1268 (failure to put on certain defenses and witnesses); *Fitzpatrick v. McCormick,* 869 F.2d 1247, 1252–54

(9th Cir.) (failure to present exculpatory evidence), *cert. denied,* 493 U.S. 872, 110 S.Ct. 203, 107 L.Ed.2d 156 (1989); *Allen,* 831 F.2d at 1496–97 (misrepresenting the relative culpability of codefendants); *Brown v. United States,* 665 F.2d 271, 272 (9th Cir.1982) (inadequate cross-examination); *Hearst,* 638 F.2d at 1193 (failure to seek continuance, failure to seek change of venue, and putting client on the stand).

(1988), to disqualify an attorney when there is a serious potential for conflict. However, the proposed rule also has serious drawbacks. Although Mett portrays his proposed rule as analogous to Federal Rule of Criminal Procedure 44(c), requiring that dual-representation conflicts be waived on the record, Rule 44(c) is much simpler to apply because the existence of dual representation is obvious to all concerned. In contrast, with the broader rule petitioner Mett proposes, difficult factual questions might arise as to when the prosecutor became aware of a conflict, or indeed when a conflict really existed, in any particular case. For this reason, we decline to state any prophylactic rule such as petitioner Mett requests.

### f. Relief Based on State Ethics Rules

■ A litigant may have a right to conflict-free counsel based on state professional ethics law rather than the Sixth Amendment. If attorneys appearing before a federal court are bound by a certain body of state ethics rules, litigants may seek disqualification of other parties' attorneys in the same proceeding for violation of the conflicts provisions of those rules. *See Christensen v. United States District Court,* 844 F.2d 694, 697 & n. 6 (9th Cir.1988) (applying California professional ethics standards adopted by a local rule of the Central District to a disqualification motion; reserving the question of what would happen in the absence of such a local rule). Petitioners contend that the alleged conflict at issue here violated their rights under state professional ethics rules.

■ Postconviction remedies under § 2255 are limited to redressing a lack of jurisdiction by the sentencing court, a constitutional violation, and "any error of fact or law of the 'fundamental' character that renders the entire proceeding irregular and invalid." *United States v. Addonizio,* 442 U.S. 178, 186, 99 S.Ct. 2235, 2241, 60 L.Ed.2d 805 (1979). For this reason, persons seeking postconviction relief on the basis of attorney conflicts of interest are limited to asserting their Sixth Amendment right to conflict-free counsel. Violations of other rights they may have had at trial, such as those arising under state ethics rules, are not redressable under

§ 2255. For this reason, even if the alleged conflict here violated petitioners' rights under state professional ethics rules (which we do not decide), that was not a proper basis for granting the § 2255 petition.

### g. Knowing and Voluntary Waiver

The United States contends that petitioners knowingly and voluntarily waived their right to conflict-free counsel, as the district court found. Because we are able to affirm the district court's denial of the petition on the ground that petitioners have not met the *Cuyler* standard, we do not reach this issue.

### 3. *Impermissible Double Counting in Sentencing.*

■ Petitioner Mett contends that he was sentenced improperly. The district court gave him a four-level upward adjustment for organizing or supervising more than five persons under U.S.S.G. § 3B1.1, together with a two-level upward adjustment for more than minimal planning under § 2F1.1(b)(2). Mett contends that this is impermissible double counting, but he recognizes that we held it to be permissible in *United States v. Kelly,* 993 F.2d 702, 704–05 (9th Cir.1993). We are bound by that holding and therefore must reject petitioner Mett's argument.

AFFIRMED.

KLEINFELD, Circuit Judge, Concurring:

I concur in the persuasive analysis by Judge Gonzalez. I write separately to illuminate a different path to the same result. The majority assumes without deciding that there was a conflict of interest. All three of us agree that, in that event, adverse effect is still necessary and did not exist. I would not even reach the issue of adverse effect, however, because I think there was no conflict of interest. Because the term is often used loosely without much analysis, to bad effect, it is useful to focus separately upon it.

Mr. Cassiday represented two different people whose interests might cause them to harbor ill feeling toward each other, a prosecutor and a defendant. But on the matters in which he represented them, neither had an

interest in having Mr. Cassiday conduct his advocacy in a manner adverse to the interest of the other. A conflict of interests arises when a lawyer's fiduciary duty to one client obligates him to act in a way contrary to the manner in which his fiduciary duty to another client requires. Mr. Osborne's drunk driving case would lead to no better or worse results depending on what Mr. Cassiday did in Center Art Gallery's case, nor would Center Art Gallery's case be helped or harmed by what happened to Mr. Osborne in his drunk driving case. Neither client would benefit from the suffering of the other.

A lawyer's duty to avoid conflict of interests arises from agency law. The ancient principle is that "[n]o man can serve two masters." Matthew 6:24. The contemporary statement is that an agent's fiduciary duty requires him to "act solely for the benefit of the principal in all matters connected with his agency," and "not to agree to act during the period of his agency for persons whose interests conflict with those of the principal in matters in which the agent is employed." Restatement 2d, Agency §§ 387, 394. Conflict of interests is not a matter of whether a lawyer's clients like each other, or whether the untutored may think it odd for a lawyer to be representing unlike clients.

An untutored journalist might "chortle," as Center's lead counsel said Mett and Wiseman did, upon learning that Center's defense lawyer represented the prosecutor in a drunk driving case. It would be amusing, in a gossip column, that Center's prosecutor was himself being prosecuted, and that the same lawyer represented both. The United States attorney would naturally be troubled by the dual representation, and would want to avoid having people laugh at the expense of his office. But that is a political and prudential concern of the United States Attorney, not a conflict of interests for the defense attorney. Neither of Mr. Cassiday's clients, Center or Mr. Osborne, had an interest for which Mr. Cassiday was engaged which would be helped or harmed by the chortling.

Analytic error in interpreting conflict of interests causes injustices. For example, if a prosecutor gets arrested, he needs an experienced local lawyer as much as any other defendant, and cannot get one if they all imagine that they are "conflicted out." Likewise, if people confuse conflict of interests with amusing juxtaposition, genuine conflicts of interest are likely to be overlooked.

There would be nothing in the gossip columns if a defense lawyer represented two defendants in the same case. It would seem natural to the untutored that a criminal defense lawyer would represent multiple criminal defendants. Yet that is the situation most commonly fraught with conflict of interest, actual conflict, not just the possibility that someone not represented by the lawyer might be embarrassed.

"No one should be represented by an attorney who is making him the 'fall guy' by design." *United States v. Allen,* 831 F.2d 1487, 1497 (9th Cir.1987). A common defense strategy is to "roll over," that is, obtain leniency for one defendant in exchange for his testimony against another. Each potential "fall guy" has an interest in having his attorney persuade the other defendants to maintain silence.

Some criminal defense attorneys are uncomfortable with running their offices as what they call "snitch factories," and prefer not to obtain lenience for the clients they represent by putting others whom they do not represent in harm's way. Yet a criminal defense lawyer's professional responsibility to his client may require him to do just that. It would be a conflict of interests for the lawyer to represent the potential target of the deal, because then his obligation to the target would obligate him to act contrary to his duty to the potential "snitch." *Cf. United States v. Caro,* 997 F.2d 657 (9th Cir.1993) (conflicting interests of defendants in "package deals").

Mr. Cassiday had no obligation to Mr. Osborne arising out of Mr. Osborne's drunk driving case to make Center a "fall guy," or otherwise breach his fiduciary obligation to Center. The Supreme Court in *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980), held that "the *possibility of conflict* is insufficient to impugn a criminal conviction" and "[i]n order to demonstrate a violation of his Sixth Amend-

ment rights, a defendant must establish that an *actual conflict* of interest adversely affected his lawyer's performance." *Id.*, emphasis added. In this case, there was at most a "possibility of conflict," not an "actual conflict."