**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael D. CHRISTAKIS,
Defendant–Appellant.**

No. 99–55298.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 17, 2000

Filed Jan. 30, 2001

Anthony M. Montemurro, Law Offices of Anthony M. Montemurro, (argued) Chicago, Illinois, and Gerald V. Scotti, (brief), Beverly Hills, California, for the defendant-appellant.

David C. Wright, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: PREGERSON, NOONAN, and SILVERMAN, Circuit Judges.

PREGERSON, Circuit Judge:

Michael Christakis appeals the district court's denial of his petition for a writ of habeas corpus, filed under 28 U.S.C. § 2255. Christakis argues that he was denied effective assistance of counsel because of his attorney's conflict of interest. We reverse.

## I.

## FACTS

In August 1990, the government charged Christakis in a five-count indictment with conspiracy to distribute cocaine. The indictment was based in part on evidence that the government gathered from a wiretap on Christakis's phone. The government's application to the district court for wiretap authorization specifically requested that the wiretap cover not only Christakis's communications, but also the communications of Dario DiCesare, another individual that the government believed to be engaging in drug trafficking.

The district court authorized the wiretap pursuant to 18 U.S.C. § 2518 after the government established that there was probable cause to believe that Christakis and DiCesare, along with several other individuals, were engaged in drug trafficking in Los Angeles. The government also made an adequate showing that normal investigative procedures had been tried without success, and that Christakis's and DiCesare's phones were being used in connection with the drug trafficking offenses.

The government's application for wiretap authorization was supported by the affidavit of Special Agent Kelly ("SA Kelly"). In the affidavit, SA Kelly related information that he had received from a confidential informant to the effect that DiCesare had been obtaining cocaine from Colombian drug traffickers, and that he was using different individuals to handle the collection of his drug debts. The affidavit suggests that DiCesare was the head of this particular drug trafficking organization. In 1989, the Drug Enforcement Agency arrested DiCesare for possession with intent to sell eleven grams of cocaine. DiCesare was convicted of the charge in 1990, and incarcerated at the Federal Metropolitan Detention Center (MDC) in Los Angeles.

In the affidavit, SA Kelly also recounted how Lynn D'Andrea—Christakis's "on and off" girlfriend—informed him that DiCesare was talking to Christakis several times a day from the MDC. D'Andrea told SA Kelly that "DiCesare has placed the money aspect of his drug operation in the hands of Christakis." Despite evidence indicating the DiCesare was involved in the same drug conspiracy as Christakis, the government did not indict DiCesare.

Christakis challenged the indictment by moving to suppress the wiretap evidence and requested a *Franks* hearing.[1] The

---

1. Pursuant to *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), if a defendant makes a preliminary showing that statements in a warrant affidavit may be false, he is entitled to a hearing to determine the validity of the supporting affidavit. If he shows that statements in the affidavit are false, the court must assess whether the warrant would have issued even in the absence of those statements.

court granted his request for a *Franks* hearing, but ultimately found that SA Kelly's statements about the need for the wiretap were true, and denied Christakis's motion to suppress.[2] On December 4, 1990, Christakis entered a conditional guilty plea to conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, but reserved the right to appeal his motion to suppress the wiretap evidence pursuant to Federal Rule of Criminal Procedure 11(a)(2). Christakis had two prior felony convictions, which made him eligible for a career offender enhancement. The court sentenced him as a career offender to 292 months imprisonment in May 1991.

Christakis was represented by attorney Victor Sherman from the time of his arrest in July 1990 through the time of sentencing in May 1991. Sherman also represented DiCesare at various times, although the record is incomplete with respect to the extent of Sherman's representation of DiCesare. The record suggests that Sherman's relationship with DiCesare dates back at least to 1983, when DiCesare was arrested for narcotics violations and the police seized several envelopes containing cash bearing Victor Sherman's name. The record also reflects that Sherman represented DiCesare when he was arrested in September 1989 and charged with distribution of cocaine.[3] Sherman continued to represent DiCesare through his sentencing for this charge on August 13, 1990, one day before the government filed the indictment against Christakis. The record does not reflect whether Sherman filed an appeal in DiCesare's case. Sherman states in a declaration filed on January 28, 1999 that between August 1990 and September 1998, he provided legal assistance to DiCesare in his efforts pursuant to the Prisoner Transfer Treaty between the United States and Italy to obtain a transfer to Italy to serve the remainder of his prison term. In 1998, DiCesare was transferred to Italy to serve the remainder of his prison term.

## II.

### THE § 2255 PETITION

In 1997, Christakis filed a 28 U.S.C. § 2255 petition to vacate, set aside, or correct his 292–month sentence on the ground that he was denied effective assistance of counsel. Christakis's § 2255 petition is based on the argument that DiCesare was an unindicted co-conspirator in the drug conspiracy for which he had been convicted, and that Victor Sherman's advocacy was adversely affected by his interest in protecting DiCesare from being implicated. Christakis presented two arguments to support his ineffectiveness claim. First, he argued that Sherman did not thoroughly examine witnesses during the *Franks* hearing because he was trying to avoid highlighting DiCesare's involvement in the conspiracy. Second, he argued that Sherman never advised him to consider providing the government with information that would have implicated DiCesare in the drug conspiracy in exchange for a reduced sentence.

On August 28, 1997, the government filed a response to Christakis's § 2255 petition that included a declaration from Victor Sherman in which he stated that he never considered whether DiCesare might have been a potential defendant in Christakis's case. Sherman also stated that he never considered what impact his representation of Christakis would have on DiCesare.

The district court denied Christakis's § 2255 petition without holding an evidentiary hearing. The court held that Sherman's representation of DiCesare and Christakis did not create an actual conflict because: (1) Sherman successively, not simultaneously represented DiCesare and Christakis; (2) DiCesare's and Christakis's cases were not "substantially related"; (3) Sherman had not revealed privileged communications to either Christakis or DiCesare in the course of his representation;

---

**2.** The Ninth Circuit affirmed the district court in *United States v. Hitchcock, et al.,* 958 F.2d 379 (9th Cir.1992) (unpublished opinion).

**3.** This charge was unrelated to the conspiracy in which Christakis participated.

and (4) there was no other evidence that Sherman had divided his loyalties.

Christakis attached an affidavit dated January 28, 1999 from Sherman to his notice of appeal. In the affidavit, Sherman stated that one of the reasons he never suggested that Christakis cooperate with the government in exchange for a reduced sentence was because of his relationship with DiCesare, and that he would have testified to this effect if he had been called as a witness at an evidentiary hearing. Sherman explained that he was worried that if he had provided this information earlier, it would have interfered with his attempt to have DiCesare transferred to Italy to serve the remainder of his prison term.

██ On the basis of this affidavit, the district court granted a certificate of appealability (COA)[4] on the issue whether Sherman rendered ineffective assistance of counsel arising from his representation of DiCesare and Christakis.[5]

### III.

### STANDARD OF REVIEW

"We review de novo both the denial of a § 2255 motion and a determination that the prisoner was not denied his Sixth Amendment right to counsel." *United States v. Mett,* 65 F.3d 1531, 1534 (9th Cir.1995) (quoting *Frazer v. United States,* 18 F.3d 778, 781 (9th Cir.1994)). "We review for clear error any factual findings the district court made in deciding [a § 2255] motion." *Id.* (quoting *Doganiere v. United States,* 914 F.2d 165, 167 (9th Cir.1990)). We review for an abuse of discretion the district court's decision to deny Christakis an evidentiary hearing on his § 2255 motion. *United States v. Chacon–Palomares,* 208 F.3d 1157, 1158–59 (9th Cir.2000).

### IV.

### SIXTH AMENDMENT STANDARDS

██ Under the Sixth Amendment, a criminal defendant has the right to be represented by counsel whose loyalties are undivided. *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Mannhalt v. Reed,* 847 F.2d 576, 579 (9th Cir.1988). "To establish a sixth amendment violation based on a conflict of interest, a defendant must show (1) that counsel actively represented conflicting interests, and (2) that an actual conflict of interest

---

4. Prior to the passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a habeas petitioner needed to obtain a certificate of probable cause before a circuit court could hear his appeal. 28 U.S.C. § 2253 (1994); *Hiivala v. Wood,* 195 F.3d 1098, 1103 (9th Cir.1999). The old § 2253 did not require that a certificate of probable cause specify the issues for appellate review. *Id.* AEDPA amended § 2253 by limiting the scope of review in a habeas petition to issues specified in the COA, the successor to the certificate of probable cause. 28 U.S.C. § 2253(c); *Hiivala,* 195 F.3d at 1102. Furthermore, a COA may issue only if a defendant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

5. Christakis has briefed two issues outside the scope of the COA, namely whether another unindicted co-conspirator's alleged retainer of Sherman created an actual conflict, and whether he was denied effective assistance of counsel when Sherman failed to advise him

about the possibility of receiving a career offender enhancement at sentencing.

We may not consider these issues on appeal because they fall outside the scope of the COA. *See Hiivala v. Wood,* 195 F.3d 1098, 1103 (9th Cir.1999). If a party wishes to expand the scope of a partial COA, he must follow the procedure set forth in Circuit Rule 22–1(d), which requires him to seek and obtain from the appellate court broader certification. *United States v. Zuno–Arce,* 209 F.3d 1095, 1099 (9th Cir.2000). Petitioners must file a motion for broader certification within thirty-five days of the district court's order denying a COA. *Id.* at 1100.

Circuit Rule 22–1 took effect on January 1, 1999. The district court granted Christakis's partial COA on February 23, 1999, almost two months after the effective date of Circuit Rule 22–1. Christakis failed to file a motion to broaden the certificate within 35 days, so this appeal should be confined to the sole issue of whether Christakis was denied the effective assistance of counsel because of Sherman's representation of DiCesare. *See id.*

adversely affected his lawyer's performance." *Id.* (citing *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

## V.

### ACTIVE REPRESENTATION OF CONFLICTING INTERESTS

■ The district court found that Sherman's representation of DiCesare and Christakis was successive, not simultaneous. This distinction is relevant because it is more difficult for a defendant to show that counsel actively represented conflicting interests in successive rather than simultaneous representation. *Mannhalt,* 847 F.2d at 580 (explaining that defendant can only establish actual conflict in successive representation by showing that the cases are "substantially related," that the attorney revealed privileged communications, or that the attorney otherwise divided his loyalties).

■ The record suggests that Sherman had an ongoing attorney-client relationship with DiCesare which started as early as 1983, and which only ended when DiCesare was transferred to Italy in 1998 to serve the remainder of his prison term. Sherman represented Christakis during this time from July 1990 until May 1991. Because the district court failed to hold an evidentiary hearing before dismissing Christakis's § 2255 petition, the record does not explain the full extent of Sherman's representation of DiCesare. We remand for a hearing on this issue.

■ If the court concludes that Sherman continued to represent DiCesare while representing Christakis, the record amply supports the conclusion that Sherman actively represented conflicting interests. The government's application for a wiretap argued that there was probable cause to believe that Christakis and DiCesare were engaged in the same drug conspiracy. SA Kelly's affidavit in support of the wiretap application suggested that DiCesare was the head of that drug conspiracy. SA Kelly's affidavit also related a statement from Christakis's girlfriend,

Lynn D'Andrea, to the effect that DiCesare "placed the money aspect of his drug operation in the hands of Christakis." D'Andrea also told SA Kelly that DiCesare spoke by telephone to Christakis from prison several times a day. These facts support Christakis's claim that DiCesare was an unindicted co-conspirator in the conspiracy for which Christakis was convicted. Christakis clearly possessed information that he could have used to implicate DiCesare in exchange for a reduced sentence. Because DiCesare was Sherman's client, however, Sherman had an interest in protecting DiCesare from being implicated in the drug conspiracy for which Christakis was convicted. Therefore, Sherman actively represented conflicting interests.

This conclusion is supported by our holding in *United States v. Allen,* 831 F.2d 1487 (9th Cir.1987), which presented a similar set of facts. There, we found actual conflict where the defendant's counsel had an attorney-client relationship with the two unindicted bosses of the drug conspiracy for which the defendant was on trial. In reaching its conclusion, this court observed:

> It is apparent that any genuine effort by [the defendant] or his lawyers to portray accurately [the defendant's] involvement and refute the false impression of the Government ... that he was a principal, would have implicated not only [his] co-defendant ... but the unindicted bosses themselves. Under such circumstances the same lawyer could not effectively represent all these clients. This predicament gave rise to an actual conflict of interest.

*Id.* at 1496–97. The facts of *Allen* were more indicative of actual conflict because the unindicted bosses were paying for the defendant's lawyer. The facts here, however, are sufficient for Christakis to establish that Sherman had a vested interest in protecting DiCesare while representing Christakis. Accordingly, we find that if Sherman simultaneously represented

DiCesare and Christakis, he actively represented conflicting interests.

## VI.

## ADVERSE EFFECT

■ In addition to showing that Sherman actively represented conflicting interests, Christakis must show that this actual conflict adversely affected Sherman's performance. *Cuyler,* 446 U.S. at 350, 100 S.Ct. 1708. To show adverse effect, Christakis "need only show that some effect on counsel's handling of particular aspects of the trial was 'likely.'" *Miskinis,* 966 F.2d at 1268 (citing *Mannhalt,* 847 F.2d at 583). Christakis need not show prejudice to prevail on his ineffectiveness claim. *Id.*

Christakis argues that Sherman's conflicting interests in representing both himself and DiCesare adversely affected his performance in two ways: (1) Sherman failed to conduct effective examinations of various witnesses at the *Franks* hearing; and (2) Sherman failed to explore the possibility of having Christakis cooperate with the government against DiCesare.

■ After reviewing the transcript of the *Franks* hearing, we affirm the district court with respect to its finding that Sherman's representation of DiCesare did not affect his performance at the *Franks* hearing. Sherman's strategy at the *Franks* hearing was twofold. First, he argued that SA Kelly's affidavit was misleading because it presented hearsay statements as first-hand information. Second, he tried to show internal contradictions in SA Kelly's affidavit that undermined SA Kelly's claim that Christakis's girlfriend did not want to act as an informant or testify against Christakis at trial. Neither of these strategies required Sherman to pursue a line of questioning that would have implicated DiCesare. Therefore, Sherman's advocacy at the *Franks* hearing was not adversely affected.

Christakis's argument that Sherman's representation of DiCesare likely affected his decision not to pursue a deal on Christakis's behalf presents a closer question. Sherman explicitly stated in an affidavit dated January 28, 1999 that he should have advised Christakis of the possibility that he would be sentenced as a career offender, and that he should have consulted with Christakis about giving evidence against DiCesare, "my other client," in exchange for a reduced sentence. Sherman then stated: "I am sure that one of the reasons I did not discuss this option with Mr. Christakis was because of my relationship with Mr. DiCesare."

■ This affidavit, if believed, clearly establishes that Sherman's representation of DiCesare adversely affected his representation of Christakis. The government argues that the prosecution never pursued cooperation with Christakis, and thus that cooperation with the government was not a viable option. This argument, however, is irrelevant for purposes of determining an ineffectiveness of counsel claim based on divided loyalty. Unlike an ineffectiveness claim based on incompetent counsel, an ineffectiveness claim based on divided loyalty does not require the defendant to show that he was prejudiced as a result of his counsel's actual conflict. *Miskinis,* 966 F.2d at 1268. As the Supreme Court stated in *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978): "In the case of joint representation of conflicting interests the evil ... is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to pretrial plea negotiations and in the sentencing process." *Id.* at 490, 98 S.Ct. 1173. Thus, to establish a Sixth Amendment violation, Christakis need not demonstrate that the government would have reduced his sentence if he had provided information implicating DiCesare. Rather, he need only show that Sherman's interest in protecting DiCesare likely affected his decision not to advise Christakis to consider pursuing a deal with the government.

This reasoning squares with this court's holding in *Allen,* 831 F.2d at 1497, where an attorney defending two clients charged with conspiracy failed to argue that one of his clients had a more subordinate role in

the conspiracy than the other. We held that the attorney's conflict of interest had an adverse effect on his representation of his client, regardless of the actual strength of the prosecution's case against the defendant. *Id.* The adverse effect inquiry focused only on whether the conflict affected the attorney's performance, not on whether the defendant would have been acquitted had the attorney made the "subordinate role" argument. *See Mett,* 65 F.3d at 1535 (using this example from *Allen* to demonstrate the difference between *Cuyler*'s "adverse effect" element and a requirement that defendant show prejudice). Similarly, all that Christakis must show here to demonstrate adverse effect is that Sherman's actual conflict probably influenced his decision not to advise Christakis to consider the option of cooperating with the government in exchange for a reduced sentence. Sherman's declaration essentially states this.

The government argues that Sherman's declaration is insufficient to establish that Sherman's relationship with DiCesare influenced his decision not to advise Christakis to pursue cooperation. The government points to Sherman's earlier declaration dated August 28, 1997 in support of the government's opposition to Christakis's § 2255 petition in which Sherman stated that he never considered the impact that his representation of DiCesare would have on his representation of Christakis. Sherman also stated that it never occurred to him that DiCesare might have been a potential defendant in Christakis's drug conspiracy case.

■ The facts to which the government points fail to establish with certainty that Sherman's representation of DiCesare did not influence his decision not to seek government cooperation for Christakis. At best, they establish that the record is inconclusive on this point, and that Sherman's credibility is at issue. The district court failed to hold an evidentiary hearing before ruling on Christakis's § 2255 petition. The record is therefore undeveloped with respect to whether Sherman's representation of DiCesare adversely affected his advocacy of Christakis. Sherman's testimony is necessary to decide this issue. Accordingly, we hold that the district court erred by failing to hold an evidentiary hearing to determine whether Sherman's representation of DiCesare affected his decision not to advise Christakis to consider providing information implicating DiCesare in drug activity in exchange for a reduced sentence. We remand to the district court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.