**Todd HIIVALA, Petitioner–Appellant,**

v.

**Tana WOOD, Respondent–Appellee.**

**No. 98–35265.**

United States Court of Appeals, Ninth Circuit.

Submitted April 13, 1999.[1]

Opinion filed Sept. 13, 1999.

Opinion Withdrawn Oct. 29, 1999.

Filed Oct. 29, 1999.

---

1. The panel unanimously finds this case suit-able for decision without oral argument. *See*

Fed. R.App. P. 34(a)(2).

1100

L. Song Richardson, Assistant Federal Defender, Tacoma, Washington, for the petitioner-appellant.

Paul D. Weisser, Assistant Attorney General, Olympia, Washington, for the respondent-appellee.

Before: PREGERSON and THOMPSON, Circuit Judges, and KELLEHER, District Judge.[2]

2. Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation.

## ORDER

The petition for rehearing is granted. The opinion filed September 13, 1999 is withdrawn. A new opinion will be filed.

## OPINION

PER CURIAM:

Todd Hiivala ("Hiivala"), a Washington state prisoner, appeals the district court's dismissal of his 28 U.S.C. § 2254 habeas petition challenging his conviction for first-degree murder and three counts of criminal solicitation to commit first-degree murder. The district court dismissed Hiivala's habeas petition with prejudice.

A motions panel of this court issued a certificate of appealability ("COA") limited to the issues of procedural default and exhaustion. As to the procedural default issue, Hiivala contends he has demonstrated cause for failing to file a timely personal restraint petition in state court, and has satisfied the prejudice requirement. As to the exhaustion issue, he contends he exhausted his federal due process claim of insufficiency of the evidence by presenting that claim to the Washington Supreme Court. Hiivala also raises other issues not specified in the COA.

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We decline to consider the issues not specified in the COA, and we affirm the district court's denial of Hiivala's petition for a writ of habeas corpus.

### I

In March 1987, Hiivala and Ronald Chenette ("Chenette") drove from Vancouver, Washington, to Portland, Oregon, to buy marijuana. In Portland, they met a young man, James Turner, who said he could get marijuana for them. After Turner failed in that endeavor, Hiivala and Chenette decided to take him outside the city and make him walk back to Portland. When Turner refused to get out of the car, a struggle ensued and Hiivala stabbed Turner in the neck with a knife. Turner struggled out of the car and ran into the woods. Hiivala and Chenette chased after him. The three men slid down an embankment, and Turner was stabbed repeatedly and killed. His body was concealed in the woods.

Hiivala was arrested for Turner's murder and was housed in the Clark County Jail. There, he met Ralph Maring ("Maring"), who, according to Hiivala, was connected with the Mafia. Maring testified that Hiivala approached him and asked if he knew anyone who could "get rid" of the witnesses against Hiivala and dispose of Turner's body. After talking with an attorney and the sheriff's office, Maring presented Hiivala with a written contract the sheriff's office prepared. The contract provided for killing the witnesses and disposing of Turner's body. Hiivala signed the contract, agreeing that in exchange for the murders he would pay $175,000 or work as an "assassinator." The contract also provided that if Hiivala performed his part of the bargain, Chenette would also be killed. Maring turned the contract over to the sheriff's office.

The state of Washington (the "State") charged Hiivala with one count of murder in the first degree and with three counts of solicitation to commit murder in the first degree. A jury found Hiivala guilty on all counts. He was sentenced to 285 months for the murder and 180 months for each of the solicitation charges, all to be served consecutively.

The Washington Court of Appeals affirmed Hiivala's conviction and sentence. Through counsel, Hiivala sought discretionary review by the Washington Supreme Court. Hiivala also submitted a *pro se* supplemental petition for review.[3]

---

**3.** Through counsel and in his *pro se* brief, Hiivala argued:

(1) his right to counsel was violated when Maring was housed in Hiivala's cell to gather information about the murder;

(2) the police employed improper investigative techniques that violated fundamental fairness;

(3) the trial court erred in joining the charges for trial;

(4) the trial court abused its discretion in denying his motion for a directed verdict

The Washington Supreme Court denied the petitions without comment. Hiivala filed neither a personal restraint petition nor any other collateral relief action in the Washington courts.

In April 1997, Hiivala filed a petition for a writ of habeas corpus in the federal district court. The petition, as amended, alleged eight grounds for relief: (1) Hiivala's right to counsel was violated when the police continued to question him after he requested counsel; (2) his right to counsel was violated when the police housed a police informant in his jail cell to obtain incriminating information; (3) the conduct of the police was so shocking as to violate fundamental fairness; (4) Hiivala's murder conviction violated the Fifth and Sixth Amendments because the trial court failed to prove jurisdiction; (5) the trial court improperly joined the murder and solicitation for murder charges; (6) there was insufficient evidence of premeditation to support the murder conviction; (7) Hiivala's sentence constituted cruel and unusual punishment; and (8) he was denied effective assistance of counsel at trial and on appeal.

On February 3, 1998, the district court, adopting a magistrate judge's report and recommendation, concluded that, except for claims 2, 3, and 8, Hiivala had failed to exhaust his claims in state court. As to the exhausted claims, the district court held they did not warrant habeas relief. The district court denied Hiivala's habeas petition and dismissed it with prejudice.

The district court then denied Hiivala's request for a certificate of appealability. Hiivala renewed that request in this court, asking for permission to brief and argue four claims: (1) lack of jurisdiction on the part of the trial court; (2) denial of the motion for severance; (3) insufficiency of the evidence to support his first-degree murder conviction; and (4) ineffective assistance of counsel. A motions panel of

because the State failed to present sufficient evidence to prove first-degree murder;

(5) the trial court erred in assuming jurisdiction; and

this court issued a COA. It decided, however, not to include in the COA Hiivala's claims that he received constitutionally ineffective assistance of counsel, that the trial court lacked jurisdiction, and that the trial court erred in denying his motion for severance. The COA issued by the motions panel limited the scope of appellate review to two issues: "whether [Hiivala] demonstrated 'cause' for his failure to file a timely Personal Restraint Petition; and whether [Hiivala] fairly presented his claim that there was insufficient evidence of premeditation to support his conviction for murder to the Washington Supreme Court."

With regard to the first issue, if Hiivala's state procedural default in failing to file a timely personal restraint petition is not excused, all of the habeas claims he seeks to raise in this appeal are barred from federal review except the claims to which the procedural bar arguably would not apply, namely, his insufficiency of the evidence claim and the issues which he asks us to review by expanding the COA.

Before we address these issues, however, there are two threshold questions we must answer: (1) Does the Antiterrorism and Effective Death Penalty Act limit the scope of our appellate review to the issues specified in the COA? (2) If it does, should we expand those issues to include issues not certified by the motions panel?

## II

█ The Antiterrorism and Effective Death Penalty Act of 1996, amended at 28 U.S.C. § 2253 (the "AEDPA"), limits the scope of review in a habeas appeal to issues specified in the COA. *See Murray v. United States*, 145 F.3d 1249, 1250–51 (11th Cir.1998); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir.1997).

(6) his sentence was excessive.

■ A plain reading of the AEDPA ineluctably leads to the conclusion that certificates of appealability are to be granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone. *See Lackey,* 116 F.3d at 151. Section 2253(c) of the AEDPA provides:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; ...
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) *shall indicate which specific issue or issues satisfy the showing required by paragraph (2).*

28 U.S.C. § 2253(c) (1999) (emphasis added).

■ When Congress alters the wording of a statute, we presume that Congress intended a change in the law. *See Brewster v. Gage,* 280 U.S. 327, 337, 50 S.Ct. 115, 74 L.Ed. 457 (1930). The pre-AEDPA § 2253[4] did not require that certificates of probable cause (the precursor to COAs) specify the issues for appellate review. *See Chacon v. Wood,* 36 F.3d 1459, 1467 (9th Cir.1994); *Van Pilon v. Reed,* 799 F.2d 1332, 1335 (9th Cir.1986). More importantly, § 2253 must limit appellate review to issues specified in the COA because, if it did not, allowing a habeas petitioner to raise uncertified issues would render meaningless the specification lan-

guage of § 2253(c)(3). *See Murray,* 145 F.3d at 1250; *Lackey,* 116 F.3d at 152. We hold that 28 U.S.C. § 2253(c)(3) limits the issues that may be considered on appeal to those specified in a COA.

### III

Hiivala contends that this panel, as the "merits panel," should broaden the scope of his appeal beyond the specification of issues allowed by the motions panel. The Advisory Committee Note to Ninth Circuit Rule 22–1, which became effective on January 1, 1999, provides in relevant part: "To the extent a party wishes to ask the merits panel to broaden the scope of the appeal beyond what was allowed by a motions panel of this court, such a motion and any response may be filed in the court of appeals promptly after the completion of briefing." Ninth Cir. R. 22–1 Advisory Committee Note.

■ Circuit Rule 22–1 and the Advisory Committee Note became effective before this case was submitted for decision. It would appear, therefore, that we should apply the Rule to Hiivala's appeal. But whether we do or not, Hiivala has complied with the Rule. After he filed his opening brief, and in response to the appellee's motion to strike that brief filed three days later, Hiivala asked this court to broaden the issues certified for appeal to include additional issues argued in his brief. That request was referred to this merits panel and is now before us.

The issues Hiivala asks us to consider, in addition to those set forth in the COA, fall into two categories: issues he previ-

---

4. Prior to the enactment of the AEDPA, § 2253 read as follows:

> In a habeas corpus proceeding before a circuit or district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit where the proceeding is had.
>
> There shall be no right of appeal from such an order in a proceeding to test the validity of a warrant to remove, to another district or place for commitment or trial, a person charged with a criminal offense

against the United States, or to test the validity of his detention pending removal proceedings.

> *An appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a State court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause.*

28 U.S.C. § 2253 (1994) (emphasis added).

ously asked the motions panel to include in the COA and which it did not, and issues he did not ask the motions panel to include in the COA.

■ With regard to the first category of issues, the Advisory Committee Note to Rule 22–1 makes clear that this court's motions panel's rulings on jurisdictional issues do not bind a merits panel of the same court. A merits panel may therefore expand the issues for review to include issues that the motions panel specifically rejected. The doctrine of "law of the case" does not preclude such a procedure.

■ "Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court. . . .'" *United States v. Alexander,* 106 F.3d 874, 876 (9th Cir.1997) (internal citation omitted). In general, however, "while a merits panel does not lightly overturn a decision made by a motions panel during the course of the same appeal, we do not apply the law of the case doctrine as strictly in that instance. . . ." *United States v. Houser,* 804 F.2d 565, 568 (9th Cir.1986). More specifically, the "law of the case" doctrine leaves open the opportunity for a merits panel to reconsider jurisdictional issues as to which a motions panel denied certification. *See id.* at 567–69 ("[T]he doctrine of 'law of the case' is inapplicable to the question of our jurisdiction to consider an appeal."); *see also Ferreira v. Borja,* 93 F.3d 671, 673–74 (9th Cir.1996).

Because 28 U.S.C. § 2253(c)(3) circumscribes the issues that may be considered on appeal to those specified in a COA, Hiivala raises a jurisdictional issue as to his uncertified claims. The motions panel excluded from the COA Hiivala's claims that he received constitutionally ineffective assistance of counsel, that the trial court lacked jurisdiction, and that the trial court erred in denying his motion for severance of the murder count.

■ The required showing for originally obtaining a COA on a claim remains the standard by which this court reviews the broadening of a COA. A habeas petition-

er's assertion of a claim must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Hiivala seeks certification of three claims: ineffective assistance of counsel, the trial court's lack of jurisdiction, and the trial court's denial of his motion for severance. We deny Hiivala's request with respect to each claim because of his failure to make a substantial showing that he has been denied a constitutional right.

Hiivala also asks us to broaden his appeal to include two additional claims that were not presented to the motions panel for certification. We have authority to consider Hiivala's request under 28 U.S.C. § 2253(c). *See also* Ninth Cir. R. 22–1 Advisory Committee Note.

■ The first additional claim Hiivala asks us to consider is his claim that the police violated his right to due process by using a jailhouse informant. Hiivala argues that the informant, Maring, was an active agent of the police and that Maring's use by the police in gathering information was so shocking as to constitute a violation of substantive due process.

As noted above, the requirement for broadening a COA to cover an additional claim is a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Hiivala fails to make such a showing.

■ The constitutional violation Hiivala asserts is a violation of his right to substantive due process. A substantive due process violation occurs when government conduct violates fundamental fairness and is "shocking to the universal sense of justice." *Kinsella v. United States,* 361 U.S. 234, 246, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960). In this case, Maring testified at the state court suppression hearing that the police were not involved in the murder-for-hire solicitation until he and Hiivala had already discussed it. The state court denied the suppression motion. The court also concluded that the police's use of Mar-

ing as an informant did not rise to the level of a violation of substantive due process. We agree and decline to broaden the COA to include this claim.

■ Hiivala's remaining additional claim is that police behavior in Minnesota-using an informant who bought beer and cocaine to share with Hiivala to elicit incriminating statements-constituted shocking conduct that violated Hiivala's substantive due process rights. Such police conduct, however, is not "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Ryan*, 548 F.2d 782, 789 (9th Cir.1976). It is well-settled that police may use informants, even supply contraband, to gain a suspect's confidence. *See United States v. Ramirez*, 710 F.2d 535, 541 (9th Cir.1983); *United States v. Wylie*, 625 F.2d 1371, 1378 (9th Cir.1980). As a result, we decline to broaden the COA to include this claim.

The only issues we consider in this appeal, therefore, are those certified by the motions panel of this court: (1) whether Hiivala demonstrated cause for his procedural default in failing to file a timely personal restraint petition in state court; and (2) whether Hiivala fairly presented to the Washington Supreme Court his federal due process claim that there was insufficient evidence of premeditation to support his conviction for murder.

## IV

### (A) Cause for Procedural Default

■ Hiivala's conviction became final for state law purposes when the Washington Court of Appeals issued its mandate on March 24, 1994. Under the state's statute of limitations, Hiivala had one year from the issuance of the mandate to file a personal restraint petition.[5] When he was sentenced, Hiivala was specifically advised by the Clark County, Washington, Superior Court of the time limitations for filing a personal restraint petition. Hiivala never filed such a petition. He contends he has established cause for this failure. We disagree.[6]

■ To demonstrate cause for a procedural default, Hiivala must establish that some external and objective factor impeded his efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Cause may be established, for example, by demonstrating interference by state officials, unavailability of the factual or legal basis for a claim, or a showing of constitutionally ineffective assistance of counsel. *See id.*

Hiivala argues that cause exists for his procedural default because prison officials impeded his efforts to file his personal restraint petition. A Clallam Bay Correction Center tower guard shot Hiivala on January 7, 1995, and Hiivala asserts that for the next six months he was transferred

5. Wash. Rev.Code 10.73.090, enacted in 1989, provides, in part:

> (1) No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.
>
> (2) For purposes of this section, "collateral attack" means any form of postconviction relief other than a direct appeal. Collateral attack includes, but is not limited to, a personal restraint petition, a habeas corpus petition, a motion to vacate judgment, a motion to withdraw guilty plea, a motion

> for a new trial, and a motion to arrest judgment.
>
> (3) For purposes of this section, a judgment becomes final on the last of the following dates:
>
> . . .
>
> (b) The date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction; . . . .

6. Because Hiivala fails to demonstrate cause for his failure to file a timely personal restraint petition, we need not consider the prejudice prong of the cause and prejudice requirements. *Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

back and forth between the Clallam Bay and Walla Walla correctional facilities. Hiivala contends that the gunshot wound and the constant movement between institutions prevented him from filing his personal restraint petition with the state.

The evidence and arguments proffered by Hiivala do not establish cause for his procedural default in failing to file a personal restraint petition. One month prior to the running of the statute of limitations, Hiivala received a letter from an attorney who was to assist him with the filing of the petition. The letter informed Hiivala that the personal restraint petition which was enclosed alleged grounds of ineffective assistance of counsel, ineffective assistance of appellate counsel, prosecutorial misconduct on appeal, and outrageous conduct by a state informant. The letter also urged Hiivala "to file th[e] Personal Restraint Petition as soon as possible." Hiivala had one month after his receipt of the personal restraint petition to file it. Although he easily could have filed the petition, he did not do so.

Hiivala has presented no evidence to support his contention that prison officials interfered with his access to the courts. *See Murray,* 477 U.S. at 488, 106 S.Ct. 2639. A review of the record reveals that Hiivala had access to an attorney, the address of the Washington Court of Appeals, and a completed personal restraint petition awaiting his signature over one month before the running of the statute of limitations. These facts are sufficient to show that Hiivala lacks cause for his procedural default. *Compare Thomas v. Lewis,* 945 F.2d 1119, 1123 (9th Cir.1991) (alleged inadequate prison library and legal assistance procedures do not establish cause), *with Buffalo v. Sunn,* 854 F.2d 1158, 1163–65 (9th Cir.1988) (prison "lockdown" that allegedly prevented petitioner from filing petition for review within the applicable statute of limitations could constitute cause).

We agree with the district court that Hiivala has "not shown any facts to establish that an objective factor external to the defense prevented him from complying with the state requirements for postconviction relief." Accordingly, we conclude that Hiivala has failed to establish cause for his procedural default.

**(B) Insufficiency of Evidence Claim**

A habeas petitioner must give the state courts the first opportunity to review any claim of federal constitutional error before seeking federal habeas review of that claim. *See Rose v. Lundy,* 455 U.S. 509, 518–19, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Hiivala contends he fairly presented to the Washington Supreme Court his federal due process claim that there was insufficient evidence of premeditation to support his conviction for first-degree murder.

To "fairly present" his federal claim to the state courts, Hiivala had to alert the state courts to the fact that he was asserting a claim under the United States Constitution. *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). The mere similarity between a claim of state and federal error is insufficient to establish exhaustion. *See id.* at 366, 115 S.Ct. 887. Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion. *See Gray v. Netherland,* 518 U.S. 152, 162–63, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996).

Hiivala contends in his federal habeas petition that his state court conviction for first-degree murder was unconstitutional because the prosecution failed to present sufficient evidence to prove the elements of first-degree murder beyond a reasonable doubt. The district court concluded that, although Hiivala had presented this claim of insufficiency of the evidence to the Washington Supreme Court, he had presented the claim only on state law grounds; therefore, Hiivala's federal claim of insufficient evidence amounting to constitutional error under federal law was

procedurally barred. We agree with the district court.

When Hiivala argued to the Washington Supreme Court that the state's evidence was insufficient to meet the burden of proof for the state crime of first-degree murder, he did not refer to the Due Process Clause of the United States Constitution. Moreover, Hiivala's argument to the Washington Supreme Court neither cited the Fourteenth Amendment nor any federal case law involving the legal standard for a federal Constitutional violation predicated upon a claim of insufficiency of the evidence to support a state law conviction. Hiivala argues these omissions should be overlooked because he contended in state court that the State had failed to prove he committed the charged offense, and this contention raised "a federal constitutional issue, even if the Fifth and Fourteenth Amendments [were] not directly cited."

Both the Supreme Court and this court have rejected similar contentions in analogous circumstances. *See Duncan,* 513 U.S. at 366, 115 S.Ct. 887 ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); *Johnson v. Zenon,* 88 F.3d 828, 830 (9th Cir.1996) ("Because the petitioner 'did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment,' his federal claim was unexhausted." (citation omitted)).

## V

In sum, we hold that the AEDPA limits the scope of our review to the issues specified in the COA. We reject Hiivala's request to expand those issues to broaden the scope of this appeal, because the issues he wants to add fail to satisfy the requirements for federal habeas review.

In resolving the issues specified in the COA, we hold that Hiivala failed to demonstrate cause for his procedural default in failing to file a timely personal restraint petition, and his insufficiency of the evidence claim is procedurally barred because he failed to exhaust it by fairly presenting it as a federal claim to the Washington Supreme Court.

AFFIRMED.