**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ruben ZUNO–ARCE, Defendant–
Appellant.**

**No. 98–56770.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 2000

Decided April 19, 2000

Kenneth M. Miller, Law Office of Kenneth M. Miller, Santa Ana, California, for the defendant-appellant.

Lawrence Ng, Assistant United States Attorney, Criminal Division, Los Angeles, California, for the plaintiff-appellee.

Before: BROWNING, GOODWIN, and GRABER, Circuit Judges.

GRABER, Circuit Judge:

Defendant Ruben Zuno–Arce is in custody following his 1992 conviction stemming from the kidnapping and murder of DEA Agent Enrique Camarena and his pilot, Alfredo Zavala–Avelar. Defendant appeals the district court's denial of his motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. On de novo review, see *United States v. Span,* 75 F.3d 1383, 1386 (9th Cir.1996), we affirm.

Defendant was a member of a drug cartel centered in Guadalajara, Jalisco, Mexico. In 1990 he was tried, along with several co-defendants, on various charges arising from the kidnapping and murder of Camarena and Zavala–Avelar. Defendant was convicted, in part because of the testimony of Hector Cervantes–Santos, an informant who testified at the trial against several members of the cartel. However, the district court granted Defendant a new trial because of an inappropriate comment during the government's closing argument. This court affirmed the grant of a new trial in an unpublished opinion. *See United States v. Zuno–Arce,* 958 F.2d 380 (9th Cir.1992).

On retrial, in 1992, Defendant was found guilty of conspiring to commit violent crimes in aid of a racketeering enterprise, 18 U.S.C. § 1959(a)(5); committing violent crimes in aid of a racketeering enterprise, 18 U.S.C. § 1959(a)(1), (2); conspiring to kidnap a federal agent, 18 U.S.C. § 1201(c); and kidnapping a federal agent, 18 U.S.C. § 1201(a)(5). Cervantes–Santos did not testify at Defendant's second trial. Instead, the government primarily relied on the testimony of two witnesses who had not testified at Defendant's first trial, Jorge Godoy–Lopez and Rene Lopez–Romero. On March 23, 1993, the district court sentenced Defendant to life in prison on each of the kidnapping counts, plus 10 years in prison on each of the racketeering counts.

This court affirmed on direct appeal on January 11, 1995. *See United States v. Zuno–Arce,* 44 F.3d 1420, 1422 (9th Cir. 1995). The mandate issued on April 7, 1995. In October 1995, the Supreme Court denied Defendant's petition for a writ of certiorari. *See Zuno–Arce v. United States,* 516 U.S. 945, 116 S.Ct. 383, 133 L.Ed.2d 306 (1995). The mandate was never stayed or recalled by this court or by the Supreme Court.

On July 1, 1997, Cervantes–Santos stated in a declaration that he had invented testimony to implicate Defendant in the 1990 trial, at the instruction of prosecutors and DEA agents. However, on January 16, 1998, Cervantes–Santos repudiated that recantation: In a videotaped interview with DEA agents, Cervantes–Santos stated that he had recanted under pressure from Defendant and Manuel Bartlett–Diaz, Governor of the State of Puebla, Mexico. He then thought better of that repudiation and, on March 8, 1998, reaffirmed his original recantation in a conversation with a defense investigator. On May 6, 1998, he reversed field again and denied having reaffirmed the recantation. Cervantes–Santos' changes of heart are described more fully in the district court's published opinion in this case. *See United States v. Zuno–Arce,* 25 F.Supp.2d 1087, 1093 (C.D.Cal.1998).

On October 29, 1997, Defendant filed a motion for new trial under Rule 33 of the Federal Rules of Criminal Procedure, based on Cervantes–Santos' declaration and other purportedly "newly discovered evidence." In his motion, Defendant also requested an evidentiary hearing. The claims in Defendant's motion fell into two general categories: claims that the government withheld exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and claims that the government knowingly

presented false evidence in Defendant's second trial, namely the testimony of Godoy–Lopez and Lopez–Romero, in violation of *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), and *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

On March 30, 1998, the district court concluded that Defendant's motion for a new trial was untimely under *United States v. Cook,* 705 F.2d 350, 351 (9th Cir.1983). In *Cook,* this court held that the two-year statute of limitations for motions for new trial based on newly discovered evidence runs from the date on which the "appellate court issues its mandate of affirmance." *Id.*[1] The district court noted that *Cook* applies even in a case in which a defendant has filed a petition for a writ of certiorari, provided that the mandate has not been stayed or recalled. *See id.* The mandate in Defendant's case issued on April 7, 1995, and Defendant filed his new trial motion more than two years later. Accordingly, the district court concluded that the motion was filed too late. Defendant does not appeal that ruling.

At Defendant's request, the district court then construed the motion as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The court noted that, because the motion was filed after April 23, 1996, it was subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which contains a one-year statute of limitations for § 2255 motions. *See* 28 U.S.C. § 2255. For motions based on newly discovered evidence, the statute of limitations begins to run on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(4). In light of that one-year limitation period, the court declared that Defen-

---

1. At the time of the district court's ruling, Rule 33 provided that a motion based on newly discovered evidence could "be made only before or within two years after final judgment." After the district court ruled on Defendant's motion, Rule 33 was amended to provide that such a motion could "be made only within three years after the verdict or finding of guilty." The effective date of that amendment was December 1, 1998, and the parties do not suggest that the new statute of limitations is relevant in this case.

dant would be required to demonstrate that the facts supporting his claims could not have been discovered before October 30, 1996, one year before Defendant filed his motion.

In its order, the district court also required Defendant "to file and serve the § 2255 forms required by local rule 26 no later than April 10, 1998." When Defendant filed those forms, he added two claims—double jeopardy and ineffective assistance of counsel—that were not part of his motion for new trial. Defendant never sought leave of the district court to amend his petition to add those claims.

On July 30, 1999, the district court granted the government's motion to exclude the results of a polygraph examination that Defendant had offered to bolster the credibility of Cervantes–Santos' recantation. On July 31, August 3, and August 10, 1998, the district court held an evidentiary hearing to address Cervantes–Santos' recantation. During that hearing, Cervantes–Santos reaffirmed under oath his 1990 trial testimony.

After receiving further briefing from the parties, the district court dismissed Defendant's motion in part and denied it in part in a published opinion filed August 18, 1998. *See Zuno–Arce*, 25 F.Supp.2d at 1087. The court first concluded that, under Federal Rule of Civil Procedure 15(a), Defendant was required to seek leave of the court before amending his motion, because the government already had filed an opposition to the motion. Because Defendant never sought leave to amend, but unilaterally added his claims of ineffective assistance and double' jeopardy, the court concluded that those claims were not properly before it and refused to consider them.[2] *See id.* at 1096, 1113.

The district court next concluded that, under *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), AEDPA's one-year statute of limitations would not apply to Defendant's claims if Defen-

dant could avail himself of the "miscarriage of justice gateway" by making a "colorable showing of factual innocence." *Zuno–Arce*, 25 F.Supp.2d at 1101–02. However, after analyzing the evidence presented at trial and Defendant's "newly discovered evidence"—including evidence that fell outside AEDPA's statute of limitations—the court held that Defendant had failed to make a satisfactory showing of actual innocence and, accordingly, was not entitled to use the "miscarriage of justice" gateway. *Id.* at 1110. The court concluded that Defendant's new evidence was impeachment evidence that "merely confirms what was already known to the jury during *Zuno II*—that Godoy–Lopez and Lopez–Romero were no angels." *Id.* Defendant had not "presented any evidence of the type identified in *Schlup* as reliable 'actual innocence' evidence" or otherwise made a colorable showing of innocence and, accordingly, could not escape AEDPA's statute of limitations. *Id.*

The court then considered the extent to which Defendant's newly discovered evidence was barred by AEDPA's statute of limitations. The court concluded that nearly all the evidence presented in Defendant's motion could have been discovered before October 30, 1996, through the exercise of due diligence. *See id.* at 1110–13. The court dismissed the sections of the motion that relied on that "time-barred" evidence. *See id.* at 1110.

Next, the district court rejected Defendant's *Mooney/Napue* claim, which was based on Defendant's assertion that Godoy–Lopez and Lopez–Romero had testified falsely at his second trial. The court stated that nearly every piece of evidence on which Defendant relied in that claim was time-barred. *See id.* at 1117. The remaining evidence was, in the court's estimation, "insufficient to even warrant an evidentiary hearing on this issue." *Id.*

---

**2.** The district court also rejected both claims on the merits, in the alternative. *See Zuno–*

*Arce*, 25 F.Supp.2d at 1096–97, 1113–15.

Finally, the court rejected Defendant's many *Brady* claims. First, the court noted that most of those claims were based on facts from outside the statute of limitations and, accordingly, were time-barred. *See id.* at 1118 n. 46. Defendant's remaining claims were that the government had failed to disclose: (1) promises of $100,000 to Godoy–Lopez and Lopez–Romero for their trial testimony; (2) information regarding DEA Agent Berrellez's recruitment of witnesses; (3) an unredacted copy of a 1992 DEA report; (4) Cervantes–Santos' false testimony against Defendant during Defendant's first trial; (5) a promise of $200,000 to Cervantes–Santos for that false testimony; and (6) payments to Cervantes–Santos and his family before and during Defendant's first trial in excess of amounts revealed at the time. The district court rejected those claims on the grounds that they were unsupported by evidence; that they were based on Cervantes–Santos' recantation which, the court concluded, was unreliable; and that they charged the government with failing to disclose evidence that was not material to Defendant's case. *See id.* at 1118–24.

Defendant moved for reconsideration, for leave to conduct discovery in support of his motion, and for leave to amend his motion to include his claims of ineffective assistance and double jeopardy. The district court denied the motion in its entirety. Defendant then filed a notice of appeal from the denial of his § 2255 motion and a request for a certificate of appealability (COA) as to all the issues that he had presented in his motion.

On October 29, 1998, the district court issued a partial COA. The court granted the COA as to a single issue: whether AEDPA's one-year statute of limitations operates to exclude "time-barred" facts offered solely to trigger an evidentiary hearing. As to all the other issues in Defendant's motion, the court denied Defendant's request for a COA, concluding that Defendant had not made a "substantial showing of the denial of a constitutional right," which is required for a COA to issue under AEDPA. 28 U.S.C. § 2253(c)(2).

Defendant filed his opening brief on appeal on September 9, 1999. In his brief, Defendant assigned error to a number of conclusions and rulings as to which the district court *had not* granted a COA. In its responding brief, the government argued that those issues are not properly before the panel, because Ninth Circuit Rule 22–1(d) requires a party who is seeking to broaden a partial COA to file a motion to broaden the COA with a motions panel of this court within 35 days of obtaining the partial COA. In his reply brief, Defendant argued that Rule 22–1(d) should not apply in his case, but also filed a motion to broaden his COA. The date of that motion was December 22, 1999.

I. *Ninth Circuit Rule 22–1(d) Applies in this Case*

Under 28 U.S.C. § 2253(c)(1), "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals" from the final order in a § 2255 proceeding. This court has held that 28 U.S.C. § 2253(c)(3) "limits the issues that may be considered on appeal to those specified in a COA." *Hiivala v. Wood,* 195 F.3d 1098, 1103 (9th Cir.1999).

This court has wrestled with the question of how a party who wishes to expand a partial COA should attempt to do so. In *United States v. Cruz–Mendoza,* 147 F.3d 1069, 1074 (9th Cir.1998) (*Cruz–Mendoza I*), the court held that, "in the interest of efficiency, where a district judge has issued a COA on some but not all the issues, we will treat the briefing of an uncertified issue as a request for a COA and first decide whether one should issue." (Footnote omitted.) This court then adopted Circuit Rule 22–1, which, as noted, had an effective date of January 1, 1999. In anticipation of the new rule's taking effect, the *Cruz–Mendoza* panel amended its opinion on December 31, 1998. *See United States v. Cruz–Mendoza,* 163 F.3d 1149 (1998)

(*Cruz–Mendoza II*). The panel deleted the above-quoted passage and, in its place, inserted a section explaining the new circuit rule. *See id.* at 1149–50. The panel also stated that there was no need to "decide whether this rule should be applied to [the defendant's] case, which had been argued and initially decided before the rule's adoption," because the defendant had failed to demonstrate that he had been denied a constitutional right. *Id.* at 1149.

Circuit Rule 22–1(d) provides, in part:

If the district court denies a certificate of appealability in part, the court of appeals will not consider uncertified issues unless petitioner first seeks, and the court of appeals grants, broader certification. *Petitioners desiring broader certification must file, in the court of appeals, a separate motion for broader certification, along with a statement of reasons why a certificate should be granted as to any issue(s) within thirty-five days of the district court's entry of its order* denying a certificate of appealability.

(Emphasis added.) The Advisory Committee Note accompanying the rule states that "[m]otions for broader certification will be decided by motions panels" except in capital cases. The Advisory Committee Note also states that, if "a party wishes to ask the merits panel to broaden the scope of the appeal beyond what was allowed by a motions panel of this court, such a motion ... may be filed in the court of appeals promptly after the completion of briefing."

■ Defendant argues that Rule 22–1 does not apply in his case, because he filed his notice of appeal before the rule's effective date. Applying the rule in his case, he contends, would violate the presumption against retroactive application of statutes by robbing him of a right that he had at the time he filed his notice of appeal, namely the right to seek to broaden his COA simply by filing a brief on the merits of the uncertified issues. Defendant contends that he should be able to rely on the rule from *Cruz–Mendoza I,* and thus be entitled to seek to expand his COA without filing a motion, even though the section of that opinion on which he relies was withdrawn nine months before he filed his opening brief in this case.

■ Defendant's argument on that point is unpersuasive. As a general matter, rules of appellate procedure apply to pending appeals to the extent that their application is just and practicable. Amendments and additions to the Federal Rules of Appellate Procedure are accompanied by orders so stating. *See, e.g.,* Order of April 23, 1996, West Federal Civil Judicial Procedure and Rules 442 (1999) ("[T]he foregoing amendments ... shall govern all proceedings in appellate cases thereafter commenced and, insofar as just and practicable, all proceedings in appellate cases then pending."). This court's meager case law on the issue of *circuit* rules is to the same effect. *See Volkswagenwerk Aktiengesellschaft v. Church,* 413 F.2d 1126, 1127–28 (9th Cir.1969) (applying a new procedural rule to a pending appeal where application of the rule would not work an injustice). Further, in *Hiivala,* this court stated: "Circuit Rule 22–1 and the Advisory Committee Note became effective before this case was submitted for decision. It would appear, therefore, that we should apply the Rule to Hiivala's appeal." 195 F.3d at 1103. Although that statement from *Hiivala* is not a holding, it supports application of Rule 22–1 in this case.

■ Defendant's argument that applying the rule to his appeal would have a "retroactive" effect is similarly unpersuasive. "A statute does not operate [retroactively] merely because it is applied in a case arising from conduct antedating the statute's enactment ... or upsets expectations based in prior law." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (citation omitted). Rather, the inquiry is "whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270, 114 S.Ct. 1483. Here, Circuit Rule 22–1 did not change the legal effect of anything that Defendant did

before its enactment. Rather, it placed a prospective procedural requirement on him. Defendant argues as if he already had filed his opening brief in reliance on *Cruz–Mendoza I* when Circuit Rule 22–1 took effect. But he had not; nor had he requested in any other manner that this court broaden his COA. When he first attempted to broaden his COA, in his September 1999 opening brief, Circuit Rule 22–1 long since had taken effect.

In sum, we conclude that Circuit Rule 22–1 applies in this case. New rules of appellate procedure, including circuit rules, apply in pending cases to the extent that their application is just and practicable. Defendant has not argued persuasively that application of Circuit Rule 22–1(d) in this appeal would not satisfy those standards. There is no compelling reason, legal or equitable, to apply the superseded rule from *Cruz–Mendoza I* and treat Defendant's opening brief as a motion for an expanded COA.

## II. *Defendant's Rule 22–1(d) Motion Was Not Timely*

Defendant finally attempted to comply with Rule 22–1(d) by filing a motion for an expanded COA on December 22, 1999. That motion is untimely.

As noted, Rule 22–1(d) states that a party seeking to broaden a COA "must file ... a separate motion for broader certification ... within thirty-five days of the district court's entry of its order denying a certificate of appealability." Here, however, the district court's order was entered on October 29, 1998, more than a month before the rule's effective date, and the parties agree that the 35–day filing period cannot begin to run from the entry of the court's order.

The government argues that the filing period should run from January 1, 1999, the date when the rule went into effect, and that the filing period therefore expired on February 5, 1999. As support for that argument, the government cites *Calderon v. United States Dist. Court (Beeler)*, 128 F.3d 1283, 1286–87 (9th Cir.1997), in which this court held that limitation periods contained in AEDPA begin to run from the statute's effective date for convictions that became final before the statute's effective date.

Defendant counters that the government's argument would result in an unjust application of the rule, because Defendant's counsel was not appointed until February 16, 1999. That argument does not aid Defendant; its logical result is that Defendant's 35–day filing period should have begun to run on February 16, in which case it would have expired on March 22, nine months before he filed his motion.

More fundamentally, Defendant appears to argue that his newly appointed counsel should have been able to ignore Rule 22–1 and rely on the old rule from *Cruz–Mendoza I*, which was withdrawn before counsel even was appointed. That argument is somewhat puzzling. Defendant does not suggest that counsel was unaware of Rule 22–1 or that he believed that *Cruz–Mendoza I* remained the law of the circuit on this point even after it was withdrawn. Indeed, it is clear that Defendant knew of the requirements of Rule 22–1 at the latest on September 9, 1999, the date of his opening brief, because he discusses the rule in that brief. However, Defendant did not attempt even at that time to comply with the rule by filing a motion for an expanded COA.

Defendant finally filed a motion under Rule 22–1(d) on December 22, 1999. In that motion, he repeats his argument that the rule should not apply in his case and argues that he reasonably could have believed that a motion was unnecessary. However, he also acknowledges that *Hiivala* suggests that the rule applies in pending cases, and he appears to state that he is filing his motion to comply with the *Hiivala* court's suggestion.

Thus, it appears that Defendant is arguing that the triggering event for his motion was the publication of *Hiivala*. The implication of that argument is that Defendant should have been given 35 days after *Hiiv-*

*ala* was published within which to file his motion, because he had no way to know before that date that a motion was required. A fatal difficulty with Defendant's argument is that *Hiivala* was published on September 13, 1999. Thus, even if Defendant is correct that his 35–day filing deadline runs from *Hiivala's* publication, his motion still is untimely, because he did not file it until 100 days after that case issued.

■ As noted, Rule 22–1(d) states that a motion to broaden a COA *must* be filed within 35 days. Here, even accepting any of Defendant's suggestions as to when that 35–day period began to run, the motion is untimely. Because Defendant has failed to comply with the express terms of Rule 22–1(d), or to provide a compelling reason for his noncompliance, we decline to address his motion to broaden the COA. As a consequence, we decline to address the issues in Defendant's brief that fall outside the limited COA that the district court granted; appeal from the denial of a § 2255 motion is strictly limited to the issues specified in the COA. *See Hiivala,* 195 F.3d at 1103.

### III. *The "Time–Barred" Evidence That Defendant Offered Did Not Require an Evidentiary Hearing*

The district court granted Defendant a COA as to only one issue. In its partial certification, the court stated: "While it is well settled that the one-year period of limitation [in AEDPA] operates to exclude evidence when the Court considers the merits of § 2255 claims, it is a first-impression issue as to whether the period of limitation operates to exclude specific facts that the Defendant believes entitle[ ] him to an evidentiary hearing." As noted, the district court held an evidentiary hearing to address some of Defendant's "newly discovered evidence," most notably Cervantes–Santos' recantation. However, the court declined to hold any further evidentiary hearing on Defendant's *Mooney/Napue* claim, concluding that the timely evidence supporting Defendant's request for a hearing "constitutes no more than con-

clusory allegations." *Zuno–Arce,* 25 F.Supp.2d at 1118.

■ When a prisoner files a motion under 28 U.S.C. § 2255, the district court must grant an evidentiary hearing to determine the validity of the motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also, e.g., United States v. Blaylock,* 20 F.3d 1458, 1465 (9th Cir.1994). A district court's decision to grant or deny an evidentiary hearing is reviewed for abuse of discretion. *See United States v. Andrade–Larrios,* 39 F.3d 986, 991 (9th Cir.1994). Defendant's *Mooney/Napue* claim alleges that Godoy–Lopez and Lopez–Romero lied at his 1992 trial. The standard one-year statute of limitations for a § 2255 motion based on this claim—which ran from "the date on which the judgment of conviction becomes final," 28 U.S.C. § 2255(1)—began to run on AEDPA's effective date, April 23, 1996, and expired before Defendant filed his motion in October 1997. *See Beeler,* 128 F.3d at 1286–87 (holding that limitation period contained in AEDPA begins to run from the statute's effective date for convictions that became final before the statute's effective date).

■ Accordingly, Defendant's motion is timely only insofar as it qualifies under one of the exceptions to AEDPA's standard limitation period. The only arguably applicable exception is the one contained in § 2255(4): "The limitation period shall run from ... the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." To prevail, Defendant must prove his claim through facts that he could have discovered only in the year before he filed his § 2255 motion. Only evidence that would demonstrate the possibility of the existence of such "newly discovered evidence" is relevant to the question whether he was entitled to an evidentiary hearing. In other words, Defendant is entitled to an evidentiary hearing if, but only if, his motion and the

record give the court some specific reason to believe that such "new" evidence exists.

 In its COA, the district court posed the question whether it was required to consider parts of the record that, on their face, fell outside AEDPA's statute of limitations in deciding whether to hold an evidentiary hearing. We need not resolve that broad question to resolve this appeal. Even assuming that the district court *was* required to consider those "time-barred" parts of the record, the district court did not abuse its discretion in denying an evidentiary hearing.

First, we agree with the district court's conclusion that the materials that the court *did* consider—Cervantes–Santos' repudiated recantation and the dismissal of the Godinez–Cervantes prosecution—were insufficient to warrant an evidentiary hearing. *See Zuno–Arce,* 25 F.Supp.2d at 1118. Nor does the material that the district court refused to consider necessitate a hearing. That material is offered either to impeach Godoy–Lopez and Lopez–Romero or to challenge specific statements that they made at trial. Taken together, that material is insufficient to establish that a hearing is required, because nothing to which Defendant points specifically suggests that "newly discovered evidence" of the sort that would be admissible on the merits of Defendant's § 2255 motion might be unearthed at a hearing. Defendant has alleged that the government violated *Mooney* and *Napue* in 1992 and has presented material in support of that allegation, most of which cannot be considered under AEDPA's statute of limitations. What he has *not* done is present anything to demonstrate the possible existence of timely evidence to support his allegations. In the absence of anything more concrete than the speculation—present in every case—that new evidence *might* exist, we decline

to order an evidentiary hearing on Defendant's *Mooney/Napue* claim.

Defendant's remaining arguments address issues that manifestly are outside the district court's partial COA. Accordingly, we decline to address them.[3]

AFFIRMED.

---

**3.** Specifically, we decline on that ground to address Defendant's contentions concerning alleged violations of *Brady;* ineffective assistance of counsel; double jeopardy; the district court's denial of leave to amend the motion; discovery; the "actual innocence gateway"; and any other arguments subsumed within Defendant's discussion of those issues.