UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MATTHEW FLETCHER,

      Petitioner-Appellant,

  v.

J. SOTO, Warden,

      Respondent-Appellee.

No.   13-56958

DC No. 2:09 cv-09115 JFW
CD Cal., Los Angeles

ORDER

JENNIFER FLETCHER,

      Petitioner-Appellant,

  v.

VELDA DOBSON-DAVIS,

      Respondent-Appellee.

No.   13-57054

DC No. 2:09 cv-09107 JFW
CD Cal., Los Angeles

Before:  REINHARDT, TASHIMA, and NGUYEN, Circuit Judges.

The Memorandum and partial dissent filed April 4, 2017, are withdrawn and replaced by the Amended Memorandum and concurrence filed concurrently with this order.

With these changes, the petitions for panel rehearing are **DENIED.** The petitions for rehearing en banc have been circulated to the full court and no judge of the court has requested a vote on en banc rehearing. The petitions for rehearing en banc are **DENIED.** *See* Fed. R. App. P. 35(f). No further petitions for panel or en banc rehearing will be entertained.

**NOT FOR PUBLICATION**



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MATTHEW FLETCHER, | No.   13-56958 |
| Petitioner-Appellant, | D.C. No. 2:09-cv-09115- JFW |
| v. | |
| J. SOTO, Warden, | AMENDED MEMORANDUM[*] |
| Respondent-Appellee. | |

| | |
|---|---|
| JENNIFER FLETCHER, | No.   13-57054 |
| Petitioner-Appellant, | D.C. No. 2:09-cv-09107- JFW |
| v. | |
| VELDA DOBSON-DAVIS, | |
| Respondent-Appellee. | |

Appeals from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted March 8, 2017
Pasadena, California

---

        *      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:     REINHARDT, TASHIMA, and NGUYEN, Circuit Judges.

Matthew and Jennifer Fletcher, husband and wife, and co-defendants below, appeal from the district court's denial of their separate 28 U.S.C. § 2254 petitions. Exercising our jurisdiction pursuant to 28 U.S.C. § 2253, we affirm.

Matthew and Jennifer Fletcher were jointly convicted of murdering Jennifer's ex-husband, Joel Shanbrom. After unsuccessful direct appeals and state habeas proceedings, Matthew and Jennifer each filed a § 2254 petition in federal district court. The district court denied the petitions and these appeals followed.

With respect to Matthew's appeal, this Court issued a certificate of appealability ("COA") on a single issue: "whether the prosecutor committed misconduct by asking Detective McCartin whether he believed [Matthew] and Jennifer Fletcher's story." We also issued a COA to Jennifer on a related issue: namely, "whether [Jennifer's] 28 U.S.C. § 2254 petition included a claim that the prosecutor committed misconduct by asking Detective McCartin whether he

believed [Jennifer] and Matthew Fletcher's story, and if so, whether [Jennifer] is entitled to relief on this claim."[1]

A district court's decision to deny a § 2254 habeas petition is reviewed de novo. *See Visciotti v. Martel*, 839 F.3d 845, 856 (9th Cir. 2016). And, while this Court normally affords AEDPA deference to state court judgments, *see, e.g.*,

---

[1] Pursuant to Ninth Cir. R. 22-1(e), Appellants request that we expand their respective COAs. First, both Jennifer and Matthew ask that we expand their COAs to decide whether the trial court erred by barring the admission of third-party culpability evidence. Second, Jennifer asks that we decide whether the trial court's failure to instruct on third-party culpability evidence was structural error and, if not, whether the California Court of Appeal's harmless error analysis was unreasonable. Third, both Jennifer and Matthew request that we consider the totality of their prosecutorial misconduct claim, rather than only the single aspect of that claim for which their COAs issued. We conclude that neither petitioner has made "a substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). *See Hiivala v. Wood*, 195 F.3d 1098, 1104 (9th Cir. 1999). We therefore deny Appellants' requests to expand their COAs.

Although the concurrence "believe[s the third-party culpability issue] to be meritorious," Judge Reinhardt declines "to exercise [his] right to expand the [COA] to include the uncertified claim." But the concurrence's reliance on *Holmes v. South Carolina*, 547 U.S. 319 (2006), as the basis for expanding the COA to include the third-party culpability issue is misplaced. This case is unlike *Holmes*, which held that excluding third-party guilt evidence "where there is strong evidence of an appellant's guilt," was a constitutional violation. *Id.* at 324 (quoting *State v. Holmes*, 605 S.E.2d 19, 24 (S.C. 2004)). The district court expressly considered and rejected any analogy to *Holmes* because here, unlike in *Holmes*, the trial court excluded the third-party evidence, not because of any perceived strength of the prosecution's evidence, but based on the probative value of the proffered evidence. This was neither "an unreasonable application of" *Holmes*, nor "an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1) & (2).

3

*Sexton v. Cozner*, 679 F.3d 1150, 1153 (9th Cir. 2012), where, as here, "the state court has not decided an issue, we review that question de novo." *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011) (quoting *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006)).

The certified issue concerns the following exchange during the prosecutor's re-direct examination of Detective McCartin following Matthew's *pro se* cross-examination:

> Q: Well, first of all, in general, [Matthew] said from time to time, would you tell somebody something that was not truthful – his word was "lie" – in order to get information. Did you do that in this case?
>
> A: Yes.
> . . .
>
> Q: At the time that you were doing that, did you, in your own mind, based upon your experience, have reason to believe that Mr. Fletcher was not being candid?
> . . .
>
> A: Yes. Yes, we did.
>
> Q: And the same with Jennifer?
>
> A: Yes.
> . . .
>
> Q: And you mentioned something that the perceptions that people had of Matthew Fletcher, they already had before you talked to them.
>
> A: Absolutely.

4

Q: Could you explain that, please.

A: The perception that most of these – I say 99 percent of witnesses that we interviewed – and I've interviewed over 100-plus, 150 witnesses in this case . . . the perception that most of the people have – not all of them – is that Matthew Fletcher was a con man and he would – he's a good salesman and he would bring them in, suck them into this business he was in, and then leave them hanging and not take care of their needs when they would call for help; or if they had a meeting to go to, he would not show up; moneys that were owed, he would not pay them and, as a result, they all felt he was a crook.

Assuming, without deciding, that we are not barred from reviewing this question by any procedural bar, *see Lambrix v. Singletary* 520 U.S. 518, 525 (1997) (noting that a procedural bar issue need not always be resolved first), we reject Appellants' argument on the merits. "A habeas petition will be granted for prosecutorial misconduct only when the misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Sassounian v. Roe*, 230 F.3d 1097, 1106 (9th Cir. 2000) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Here, Appellants' certified claim rests entirely on the prosecutor's questioning of a single witness, Detective McCartin. The challenged exchange arose only after Matthew, acting as his own counsel during cross-examination, opened the door for the government to solicit Detective McCartin's views as to the veracity of the individuals he interviewed during his

investigation, including both witnesses to and targets of that investigation. *See United States v. Garcia-Guizar*, 160 F.3d 511, 522 (9th Cir. 1998) ("We have emphasized that [w]here the defendant opens the door to an argument, it is fair advocacy for the prosecution to enter." (citations and internal quotation marks omitted)).

Accordingly, Appellants have failed to carry their burden to show that a constitutional violation occurred. We therefore reject their claim of prosecutorial misconduct and affirm the district court's denial of their § 2254 petitions.

In both appeals, the judgment of the district court is **AFFIRMED.**

*Fletcher v. Soto*, 13-56958
*Fletcher v. Dobson-Davis*, 13-57054

Reinhardt, Circuit Judge, concurring:

While I agree with my colleagues that the petitioners failed to establish that a constitutional violation occurred with respect to the certified claim, although not necessarily for the reason given, I have decided not to exercise my right to expand the certificate of appealability to include the uncertified claim. I do so because it is apparent to me that my colleagues, having read the record and the briefs with respect to that issue, are persuaded that the claim does not have merit. It would therefore be an idle act to require the state to brief the issue, which could serve only to confirm my colleagues' views. I would note, however, that my own analysis of the uncertified claim is to the contrary. I believe it to be meritorious. Under the circumstances, I think that it is my obligation to record my reasons for that belief.

In *Holmes v. South Carolina*, the Supreme Court established that criminal defendants have a right to present evidence of third-party guilt as long as that evidence has more than "only a very weak logical connection to the central issues" at trial. 547 U.S. 319, 330 (2006). If a state's third-party evidence rule, or that rule's application in a particular case, prevents criminal defendants from putting on evidence central to their defense, the application is "arbitrary" and "violates a

criminal defendant's right to have 'a meaningful opportunity to present a complete defense.'" *Id.* at 331 (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

The application of California's third-party guilt rule in the Fletchers' criminal trial clearly violated the defendants' right to put on evidence central to their defense, and thus constituted an unreasonable application of well-established Supreme Court law. Under California law, "evidence of mere motive or opportunity to commit the crime . . . without more, will not suffice to raise a reasonable doubt about the defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." *People v. Hall*, 41 718 P.2d 99, 104 (Cal. 1986). We need not consider whether that statute is on its face constitutional because in the present case, there was more. The California court excluded evidence that was central to the Fletchers' defense and had a strong logical connection to that defense. The exclusion of that evidence, therefore, constituted an unreasonable application of well-established Supreme Court law. *See Holmes*, 547 U.S. at 330-31; *Crane*, 476 U.S. at 690. The Fletchers provided direct evidence of both motive and opportunity of a third party to commit the crime in question, as well as strong circumstantial evidence linking that person – Donald Moffett – to the crime. The Fletchers were prepared to present evidence from eight to ten witnesses at trial consistent with their version of the facts that Moffett and his uncle entered the Shanbrom home for the purpose of committing a robbery and shot Joel Shanbrom when they encountered him. This evidence included testimony that Moffett and his

uncle were on the Shanbroms' street that afternoon purportedly installing a security system in a neighborhood home; that Moffett and his uncle were members of the East Coast Crips, a gang that was committing home robberies around the time of the shooting; that some of these robberies were committed by Crip members pretending to be security or police officers by wearing clothing that said "Police" or "Security" on it, and that Moffett had been seen in the Shanbrom neighborhood on the evening of the shooting wearing a shirt with "Security Tech" printed on it; that Moffett's uncle in particular was using his security company as an excuse to "scope out" homes for burglaries and robberies; that members of the East Coast Crips had been committing burglaries specifically by pouring water into security systems to disarm them and that the gang members were carrying weapons during these crimes; that Moffett lied to police about leaving the neighborhood at 5:30 p.m. while actually he was aggressively approaching people to ask for cigarettes and otherwise acting strangely as late as at least 7:30 p.m.; that asking for cigarettes was a technique sometimes used by gang members as a pretext to approach people to rob them or even gain entry into a person's home; that the Shanbroms' neighbor heard her two dogs begin barking towards the Shanbrom house at around 8:30 p.m., and that this was something the dogs did if they heard or saw somebody wandering around outside the house; and that a different neighbor heard someone try to break into his home around 9 p.m. that night. All of this would have substantiated Jennifer Fletcher's statements, made immediately after the shooting, that she was upstairs giving her child a bath when she

heard her husband say "I'm a cop," followed by a shot, and then the voice of a black man saying "What did you do dat for?" A gang expert would have testified that the use of "dat" instead of "that" was consistent with the particular speech pattern of someone from South Central Los Angeles, most often a gang member. That same gang expert would also have testified that using two different types or brands of ammunition in a shotgun, as the shooter of Joel Shanbrom did, was a practice "particularly unique" to gang crimes. Because the Fletchers maintained their innocence at trial yet were denied the opportunity to present evidence corroborating their version of the facts – that a black man and an accomplice were in the Shanbroms' home to commit a burglary and instead murdered Joel Shanbrom when surprised by him – I believe the petitioners have sufficiently presented "a substantial showing of a denial of a constitutional right." *Hiivala v. Wood*, 195 F.3d 1098, 1104 (9th Cir. 1999). At the least, petitioners have shown that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, in my view, the petitioners have presented a claim that might well warrant reversal of their convictions.