Reinhardt, Circuit Judge,
concurring:
While I agree with my colleagues that the petitioners failed to establish that a constitutional violation occurred with respect to the certified claim, although not necessarily for the reason given, I have decided not to exercise my right to expand the certificate of appealability to include the uncertified claim. I do so because it is apparent to me that my colleagues, having read the record and the briefs with respect to that issue, are persuaded that the claim does not have merit. It would therefore be an idle act to require the state to brief the issue, which could serve only to confirm my colleagues’ views. I would note, however, that my own analysis of the uncertified claim is to the contrary. I believe it to be meritorious. Under the circumstances, I think that it is my obligation to record my reasons for that belief.
In Holmes v. South Carolina, the Supreme Court established that criminal defendants have a right to present evidence of third-party guilt as long as that evidence has more than “only a very weak logical connection to the central issues” at trial. 547 U.S. 319, 330, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006). If a state’s third-party evidence rule, or that rule’s application in a particular case, prevents criminal defendants from putting on evidence central to their defense, the application is “arbitrary” and “violates a criminal defendant’s right *728 to have ‘a meaningful opportunity to present a complete defense.’ ” Id. at 331, 126 S.Ct. 1727 (quoting Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)).
The application of California’s third-party guilt rule in the Fletchers’ criminal trial clearly violated the defendants’ right to put on evidence central to their defense, and thus constituted an unreasonable' application of well-established Supreme Court law. Under California law, “evidence of mere motive or opportunity to commit the crime ... without more, will not suffice to raise a reasonable doubt about the defendant’s guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime.” People v. Hall, 41 Cal.3d 826, 226 Cal.Rptr. 112, 718 P.2d 99, 104 (1986). We need not consider whether that statute is on its face constitutional because in the present case, there was more. The California court excluded evidence that was central to the Fletchers’ defense and had a strong logical connection to that defense. The exclusion of that evidence, therefore, constituted an unreasonable application of well-established Supreme Court law. See Holmes, 547 U.S. at 330-31, 126 S.Ct. 1727; Crane, 476 U.S. at 690, 106 S.Ct. 2142. The Fletchers provided direct evidence of both motive and opportunity of a third party to commit the crime in question, as well as strong circumstantial evidence linking that person—Donald Moffett—to the crime. The Fletchers were prepared to present evidence from eight to ten witnesses at trial consistent with their version of the facts that Moffett and his uncle entered the Shanbrom home for the purpose of committing a robbery and shot Joel Shan-brom when they encountered him. This evidence included testimony that Moffett and his uncle were on the Shanbroms’ street that afternoon purportedly installing a security system in a neighborhood home; that Moffett and his uncle were members of the East Coast Crips, a gang that was committing home robberies around the time of the shooting; that some of these robberies were committed by Crip members pretending to be security or police officers by wearing clothing that said “Police” or “Security” on it, and that Moffett had been seen in the Shanbrom neighborhood on the evening of the shooting wearing a shirt with “Security Tech” printed on it; that Moffett’s uncle in particular was using his security company as an excuse to “scope out” homes for burglaries and robberies; that members of the East Coast Crips had been committing burglaries specifically by pouring water into security systems to disarm them and that the gang members were carrying weapons during these crimes; that Moffett lied to police about leaving the neighborhood at ■ 5:30 p.m. while actually he was aggressively approaching people to ask for cigarettes and otherwise acting strangely as late as at least 7:30 p.m.; that asking for cigarettes was a technique sometimes used by gang members as a pretext to approach people to rob them or even gain entry into a person’s home; that the Shanbroms’ neighbor heard her two dogs begin barking towards the Shanbrom house at around 8:30 p.m., and that this was something the dogs did if they heard or saw somebody wandering around outside the house; and that a different neighbor heard someone try to break into his home around 9 p.m. that night. All of this would have substantiated Jennifer Fletcher’s statements, made immediately after the shooting, that she was upstairs giving her child a bath when she heard her husband say “I’m a cop,” followed by a shot, and then the voice of a black man saying “What did you do dat for?” A gang expert would have testified that the use of “dat” instead of “that” was consistent with the particular speech *729 pattern of someone from South Central Los Angeles, most often a gang member. That same gang expert would also have testified that using two different types or brands of ammunition in a shotgun, as the shooter of Joel Shanbrom did, was a practice “particularly unique” to gang crimes. Because the Fletchers maintained their innocence at trial yet were denied the opportunity to present evidence corroborating their version of the facts—that a black man and an accomplice were in the Shan-broms’ home to commit a burglary and instead murdered Joel Shanbrom when surprised by him—I believe the petitioners have sufficiently presented “a substantial showing of a denial of a constitutional right.” Hiivala v. Wood, 195 F.3d 1098, 1104 (9th Cir. 1999). At the least, petitioners have shown that “jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.” Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Therefore, in my view, the petitioners have presented a claim that might well warrant reversal of their convictions.